<table>
<tr><td>

**This Decision is a Precedent
of the Trademark Trial and Appeal
Board**

</td></tr>
</table>

**UNITED STATES PATENT AND TRADEMARK OFFICE**
Trademark Trial and Appeal Board
P.O. Box 1451
Alexandria, VA  22313-1451

Baxley

Mailed:  December 30, 2011

Cancellation No. 92052047

Mattel, Inc.

v.

The Brainy Baby Company, LLC

Before Seeherman, Ritchie, and Wolfson,
Administrative Trademark Judges.

By the Board:

   The Brainy Baby Company, LLC ("respondent") owns a

registration for the mark LAUGH & LEARN and design in the

following form,



for a "series of prerecorded videotapes, audio cassettes,

digital video discs and compact discs featuring live and

animated educational materials intended to develop and

improve the creative and intellectual faculties of infants

and children" in International Class 9.[1]

---

[1] Registration No. 3214699, issued March 6, 2007, based on an
application that was filed July 21, 2004, and alleging February
15, 2004 as the date of first use anywhere and date of first use
in commerce.  The registration includes a disclaimer of LEARN.
   In the application for such registration, respondent initially
sought registration of the mark on the Supplemental Register;
respondent, however, amended the application to one seeking

On February 5, 2010, Mattel, Inc. ("petitioner") filed a petition to cancel respondent's registration on the following two grounds: (1) that, when respondent filed the application for the involved registration, the registered mark was not in use for a series of goods and was instead only the title of a single creative work; and (2) likelihood of confusion with petitioner's previously used mark LAUGH & LEARN for "developmental toys for infants; [and] infant toys," Trademark Act Section 2(d), 15 U.S.C. Section 1052(d). Respondent, in its answer, denied the salient allegations of the petition to cancel.

On December 22, 2010, petitioner filed a motion for leave to file an amended petition to cancel, under Fed. R. Civ. P. 15(a), to add a claim of abandonment, and to extend the discovery period. Following full briefing of that motion, which remains pending,[2] petitioner, on February 22, 2011, filed a motion for summary judgment on its initial claim that the mark was not in use as a trademark when respondent filed its application, because the involved mark "was being used by [respondent] only as the title for a single creative work, and not as the title for a series of works." Petition to cancel, paragraph 6.

---

registration on the Principal Register on March 11, 2005, during *ex parte* examination of the application.
[2] On April 12, 2011, the Board issued an order suspending this proceeding retroactive to December 22, 2010.

We will first consider the motion for summary judgment. As an initial matter, petitioner's reply brief in support of such motion is twenty-two pages long, consisting of a table of contents page, a two-page table of authorities, and nineteen pages of text. As such, it exceeds the ten-page limit for reply briefs in support of motions and has therefore received no consideration. *See* Trademark Rule 2.127(a). *See also Saint-Gobain Corp. v. Minnesota Mining and Mfg. Co.*, 66 USPQ2d 1220 (TTAB 2003).[3] We have, however, treated as rebuttal evidence the CD-ROM copy of the VHS tape and the DVD that opposer submitted as exhibits to that reply brief, and therefore considered them.

Summary judgment is an appropriate method of disposing of a case in which there is no genuine dispute as to any material fact, thus leaving the case to be resolved as a matter of law. *See* Fed. R. Civ. P. 56(c). A dispute as to a material fact is genuine only if a reasonable fact finder viewing the entire record could resolve the dispute in favor of the nonmoving party. *See Olde Tyme Foods Inc. v. Roundy's Inc.,* 961 F.2d 200, 22 USPQ2d 1542, 1544 (Fed. Cir. 1992). In deciding a motion for summary judgment, the Board must view the evidence in the light most favorable to the nonmovant, and must draw all

---

[3] Although respondent did not file a motion to strike the reply brief on the basis of its excessive length, the length limitations for briefs are set in the rules, and cannot be waived

reasonable inferences from underlying facts in favor of the nonmovant. *Id.*

For the Board to grant summary judgment, petitioner must establish that there is no genuine dispute as to its standing and as to the ground on which it seeks entry of summary judgment. *See* Fed. R. Civ. P. 56(a). *See also Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 945, 55 USPQ2d 1842, 1844 (Fed. Cir. 2000). Such standing is established by petitioner's submission, as an exhibit to its brief in support of the motion for summary judgment, of a copy of the application file of petitioner's pleaded application Serial No. 78525119 for the mark LAUGH & LEARN in standard character form for "developmental toys for infants; infant toys" in International Class 28. The Office action in that file shows that such application was refused registration under Trademark Act Section 2(d), 15 U.S.C. Section 1052(d), based on respondent's involved registration. *See Weatherford/Lamb Inc. v. C&J Energy Services Inc.*, 96 USPQ2d 1834 (TTAB 2010). By virtue of the refusal to register petitioner's pending application, there is no genuine dispute that petitioner has standing to bring the current proceeding.

The substantive issue before the Board on this motion is whether respondent was using the mark for a series at the

---

even by agreement of the parties. See *Saint-Gobain Corp. v.*

4

time it filed its application.  As respondent itself has put it, "the only issue before the Board is whether [respondent's] use of the mark in connection with both a video tape and DVD constitutes use [of] the mark for a '*series of prerecorded videotapes, audio cassettes, digital video discs and compact discs featuring live and animated educational materials intended to develop and improve the creative and intellectual faculties of infants and children*.'" Brief in opposition at 6 (emphasis in original).

The title of a single creative work is not considered a trademark, and is therefore unregistrable on the Principal Register under Trademark Act Sections 1, 2, and 45, 15 U.S.C. Sections 1051, 1052, and 1127.  *See In re Cooper*, 254 F.2d 611, 117 USPQ 396 (CCPA 1958) ("*Cooper*").  The title of a single creative work is, of necessity, descriptive of the work and does not function as a trademark.  *See In re Scholastic Inc*., 223 USPQ 431, 431 (TTAB 1984) ("*Scholastic I*").  On the other hand, if a term has been used to identify the source of a series of creative works, it functions as a trademark, and the fact that it may also be included in the title of each work does not destroy its source-originating function.  *See In re Scholastic Inc.*, 23 USPQ2d 1774, 1776 (TTAB 1992) ("*Scholastic* II"); TMEP Section 1202.08 (8th ed. 2011).

---

*Minnesota Mining and Mfg. Co., supra.*

In *Cooper*, the Court of Customs and Patent Appeals, the predecessor to the Court of Appeals for the Federal Circuit, found that the proposed mark, TEENY-BIG for children's books, was not a trademark and was instead a descriptive name of the book in question. *Cooper*, 117 USPQ at 399-400. The court noted that, unlike copyright protection,

> [t]he protection accorded the property right in a trademark is not limited in time and endures for as long as the trademark is used. ... [E]ventually all books fall into the public domain. The right to copy which the law contemplates includes the right to call the copy by the only name it has and the title cannot be withheld on any theory of trademark right therein.

*Id.* at 400. By contrast,

> [t]he name for a series, at least while it is still being published, has a trademark function in indicating that each book of the series comes from the same source as the others. The name of the series is not descriptive of any one book and **each book has its individual name or title**. A series name is comparable to the title of a periodical publication such as a magazine or newspaper.

*Id.* (emphasis added). *See also Scholastic* II, 23 USPQ2d at 1776.

In subsequent cases, the Board and our primary reviewing court both have followed this policy and affirmed the refusal of registration of titles of single creative works. *See Herbko Int'l Inc. v. Kappa Books Inc.*, 308 F.3d 1156, 64 USPQ2d 1375 (Fed. Cir. 2002) (petitioner found not to have proprietary rights in CROSSWORD COMPANION for a series of crossword puzzle books at time respondent filed

6

its involved application because petitioner did not publish its second volume of such books until after respondent's first use); *In re Posthuma*, 45 USPQ2d 2011 (TTAB 1998) (PHANTASM unregistrable as the title of a theater production, notwithstanding that there were necessarily some variations stemming from the fact that each performance of that production was live); *In re Hal Leonard Publ'g Corp.*, 15 USPQ2d 1574 (TTAB 1990) (INSTANT KEYBOARD unregistrable as the title of single book featuring musical keyboard instruction); *Scholastic* I at 431 (in finding THE LITTLES unregistrable for a series of educationally oriented children's books which included "The Littles" as a portion of the titles, the Board stated that "The Littles would be viewed only as the identity of the characters in the title of each book and not as a trademark for a series of books"); *In re Appleby*, 159 USPQ 126 (TTAB 1968) (HYPNO-SMOKE unregistrable as the title of a single phonograph record featuring a lecture on smoking cessation); *In re National Council Books, Inc.*, 121 USPQ 198 (TTAB 1959) (NATIONAL GARDEN BOOK unregistrable as the title of a single book, notwithstanding that applicant published other books having the term NATIONAL as part of the titles, e.g., NATIONAL COOK BOOK and NATIONAL FLOWER ARRANGING BOOK). *But see Scholastic* II, *supra* (THE MAGIC SCHOOL BUS registrable for a series of children's books; distinguished from *Scholastic* I

in that prominent display of the mark THE MAGIC SCHOOL BUS created a separate commercial impression from the titles of the books at issue).

There is no genuine dispute that respondent sells, and had sold at the time it filed its underlying application, a VHS tape and a DVD using LAUGH & LEARN only as the title of each product. Nor is there any genuine dispute as to the content of each. Both the VHS and DVD versions are of record, submitted by petitioner as exhibits to its reply brief.[4]

We have reviewed these submissions and could not identify any differences in the content of the featured program in the VHS tape and the DVD. The featured program on the VHS tape is forty-five minutes of elementary learning concepts geared toward toddlers. The DVD has the same featured program, but also includes some additional features. Specifically, the DVD includes a "Scene Selection" menu feature that allows viewers to begin

---

[4] In support of the motion for summary judgment, petitioner submitted the declaration of William Lehner, a trademark administrative assistant of petitioner's attorney, who avers that he viewed the VHS tape and the DVD sold under the involved mark; that the content of the featured program on the VHS tape and the DVD "appears to be the same;" and that the DVD merely contains a few additional features not included on the VHS tape. In opposition to the motion, respondent asserts that Mr. Lehner has "no ascertainable background, training or experience in comparing the video content for purposes of determining whether a VHS and DVD constitute multiple creative works." Brief in opposition at 9. However, respondent does not identify any differences in the content of the featured program on the VHS tape and the DVD.

playback at ten points of the program and an "Extras" menu, which includes the following additional content: Behind the Scenes (a seven-minute clip featuring information on the making of respondent's videos and customer testimonials), Baby Bloopers (less than two minutes of outtakes and bloopers), Sneak Peaks (an advertisement for respondent's other video titles, none of which includes LAUGH & LEARN), a Contact Us screen (information on contacting respondent), Baby Face Storybook (an nine-panel storyboard that is on view for less than two minutes and does not change in content), and a page entitled DVD-ROM Activities that instructs viewers to put the DVD into a computer to open a file found in the DVD-ROM folder. Such file provides a link to a website that displays a black and white design similar to the cover of the DVD.

We find no genuine dispute that the additional content on the DVD is insufficient to show that the VHS and DVD versions are a series. The featured program on both the VHS tape and the DVD are the same creative work, and the addition of the minor enhancements in the DVD does not transform this single work into a series, any more than the variations in a live performance that occur from night to night transform the title of a single production into a series. See *Posthuma, supra*. Moreover, the LAUGH & LEARN program is promoted in respondent's catalogs as a single

work that is available in both VHS and DVD formats. *See,*
*e.g.,* discovery deposition of respondent's president and
CEO, Dennis P. Fedoruk, exhibits 16 and 17. Consumers will
understand that the DVD version, even with the enhancements,
is merely the same work as appears on the VHS tape, both of
which have the title LAUGH & LEARN, rather than regarding
the DVD as another item in a series bearing the mark LAUGH &
LEARN.

The case law is clear that parties cannot gain
trademark rights in titles of works, and that in order to
obtain or maintain a registration, there must be clear
evidence that the mark identifies a series of different
works. The policy for this is clear. Because a trademark
can endure for as long as the trademark is used, at the
point that copyright protection ends and others have the
right to use the underlying work, they must also have the
right to call it by its name. See *Cooper*, 117 USPQ at 400.

Respondent has not cited to any cases, nor is the Board
aware of any, in which a series of creative works was found
based on the same featured program sold under the same title
in different formats with minor additional content in one of
the formats. Because respondent's use of the same title for
essentially the same work delivered in two formats does not
transform the title into a mark for a series, we find that
petitioner is entitled to entry of judgment as a matter of

10

law on its claim that respondent has not used LAUGH & LEARN as a trademark for a series, but only as the title of a single creative work.

In view thereof, petitioner's motion for summary judgment is granted.[5]  Judgment is hereby entered against respondent, the petition to cancel is granted, and Registration No. 3214699 will be cancelled in due course.

---

[5] Petitioner's motion for leave to file an amended petition to cancel is moot.