3/22/02

THIS DISPOSITION
IS CITABLE AS PRECEDENT
OF THE T.T.A.B.

cab

UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
Trademark Trial and Appeal Board
2900 Crystal Drive
Arlington, Virginia 22202-3513

Opposition No. 121,784

Ron Cauldwell Jewelry, Inc.

v.

Clothestime Clothes, Inc.

Before Simms, Hairston and Wendel, Administrative Trademark
Judges.

By the Board:

Applicant has filed to register the mark EYE CANDY for

goods and services, including the following services that are

the subject matter of this opposition:

> retail store services featuring apparel, footwear,
> cosmetics, fragrances, health and beauty aids,
> candles, hair accessories, jewelry, watches, hand
> bags and carry bags, stationery goods, key chains,
> picture frames and giftware, in Class 35.[1]

---

[1] Application Serial No. 75/496,244, filed on June 3, 1998, claiming
a bona fide intention to use the mark.  The goods, which are not the
subject matter of the opposition, are identified as follows:
    nail polish, lipstick, eyeshadow, eyeliner, mascara, blush,
foundation; body soaps, body powder, body lotion, body cream; bath
and shower gel; hair shampoo and hair conditioner, hair mousse, hair
spray, nail glitter, scented body spray, glitter body gel, and
glitter body cream, in Class 3;
    earrings, jewelry; watches, in Class 14;
    hand bags, wallets, tote bags, back packs; umbrellas, in Class
18;

As grounds for the opposition, opposer alleges that applicant's mark, when used on the identified services, so resembles opposer's previously used mark EYE CANDY for "retail stores featuring jewelry, watches, money clips, cuff links, key chains, clocks, handbags, purses, shawls, scarves, gloves, and decorative hair clips and pins" as to be likely to cause confusion, mistake or deception. Opposer's mark, in a stylized presentation set out below,

is the subject matter of pending application Serial No. 75/702,898, filed on May 11, 1999, for the services recited above, and claiming use in commerce since May 1996.[2]

Applicant denies the salient allegations of the notice of opposition and asserts affirmative defenses. In particular, applicant asserts that, on or about November 11, 1998, the parties entered into a coexistence agreement whereby opposer consented to applicant's use

---

belts, panties, socks, tights, hats, gloves, scarves, lingerie; footwear, in Class 25; and
hair bands, hair clips, pony tail holders, in Class 26.

[2] In its notice of opposition, opposer alleges that its mark has been used by opposer and opposer's predecessors-in-interest since early 1993.

and registration of applicant's EYE CANDY mark for the goods and services identified in applicant's pending application Serial Nos. 75/373,158[3] and 75/496,244 (the subject application herein.)  Applicant further asserts that opposer's claims are barred by the doctrines of waiver, estoppel and laches.

This case now comes up on applicant's motion, filed August 8, 2001, for summary judgment in its favor based on its affirmative defense invloving the coexistence agreement.  Opposer responded on October 18, 2001, pursuant to extension requests, filed September 12, 2001 and October 15, 2001, respectively, and agreed upon by the parties.

Before turning to applicant's motion for summary judgment, the Board must preliminarily address applicant's consented motion, filed November 11, 2001, for an extension of time until November 30, 2001, to file its "memorandum in further support of its motion for summary judgment" (stamped "approved" on November 30, 2001 by a Board paralegal), and applicant's reply brief,

---

[3] Serial No. 75/373,158 for the mark EYE CANDY was filed on October 15, 1997, for "clothing, namely, pants, shorts, skirts, t-shirts, blouses, sweaters, panties and lingerie," claiming a bona fide intention to use.  Applicant filed an amendment to allege first use and first use in commerce since May 1, 1998.

filed November 26, 2001.  Applicant's reply brief is

fifteen (15) pages in length.

Trademark Rule 2.127(a) provides in relevant part as

follows:

> The Board may, in its discretion, consider a reply
> brief.  Except as provided in paragraph (e)(1) of
> this section,[4] a reply brief, if filed, shall be
> filed within 15 days from the date of service of the
> brief in response to the motion.  The time for
> filing a reply brief will not be extended.  No
> further papers in support of or in opposition to a
> motion will be considered by the Board … and a reply
> brief shall not exceed more than 10 pages in length.

Trademark Rule 2.127(e)(1), which applies specifically to

briefs for summary judgment motions, parallels Trademark

Rule 2.127(a) with respect to timeliness as follows:

> …The Board may, in its discretion, consider a reply
> brief.  A reply brief, if filed, shall be filed
> within 15 days from the date of service of the brief
> in response to the motion.  The time for filing a
> reply brief will not be extended.  No further papers
> in support of or in opposition to a motion will be
> considered by the Board.

Thus, the Board, in error, approved applicant's November 2,

2001 consented motion to extend its time to file a reply

brief.  Said approval is hereby vacated, and applicant's

consented motion to extend its time to file a reply brief is

denied.  In addition to being untimely, applicant's reply

---

[4] Paragraph (e)(1) refers specifically to motions for summary
judgment.

brief exceeds the designated page limit.  See, also, *Estate of Shakur v. Thug Life Clothing Co.,* 57 USPQ2d 1095 (TTAB 2000).

Accordingly, no consideration will be given to applicant's reply brief.

The Board now turns to applicant's motion for summary judgment.

In a motion for summary judgment, the moving party has the burden of establishing the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56.  A genuine dispute with respect to a material fact exists if sufficient evidence is presented that a reasonable fact finder could decide the question in favor of the non-moving party.  See *Opryland USA Inc. v. Great American Music Show, Inc.,* 970 F.2d 847, 23 USPQ2d 1471 (Fed. Cir. 1992).  Thus, all doubts as to whether any particular factual issues are genuinely in dispute must be resolved in the light most favorable to the non-moving party. See *Olde Tyme Foods Inc. v. Roundy's Inc.,* 961 F.2d 200, 22 USPQ 1542 (Fed. Cir. 1992).

Applicant seeks judgment as a matter of law arguing that there are no genuine issues of material fact and that it is entitled to registration by virtue of the terms of the coexistence agreement between the parties.  According to applicant, it filed its application Serial No. 75/496,244 on

June 3, 1998 for the identified goods and services, including the retail store services; and opposer's principal contacted applicant in and around September 1998 when the parties engaged in a series of phone conversations resulting in a coexistence agreement between the parties dated October 23, 1998 (executed by opposer's principal on November 11, 1998). Applicant contends that the terms of the coexistence agreement are unambiguous; and that, by those terms, opposer is precluded from preventing applicant from registering the mark EYE CANDY for the identified retail store services.

Applicant's motion is supported by the declaration of its attorney, Joseph R. Molko, introducing a copy of the filing receipt and application Serial No. 75/496,244; a copy of the coexistence agreement; and a copy of a letter dated April 18, 2000 from opposer's previous counsel to applicant's counsel notifying applicant of some incidents of actual confusion.

Before opposer's arguments are set forth, the full terms of the agreement (dated October 23, 1998) are repeated below:

*Page 1*

> As you know, our client, Clothestime Stores, Inc., has filed Trademark Application Ser. No. 75/373,158 for the mark EYE CANDY for clothing in International Class 25 and Trademark Application Ser. No. 75/494,244 for a wide variety of other products and services, specifically nail polish, health and beauty aids, fragrances and cosmetics, in Class 3; earrings, jewelry; watches, in Class 14; hand bags, wallets, tote bags, back packs and

umbrellas, in Class 18; belts, panties, socks, tights, hats, gloves, scarves, lingerie; footwear, in Class 25; hair bands, hair clips, pony tail holders, in Class 26; and retail store services featuring apparel, footwear, cosmetics, fragrances, health and beauty aids, candles, hair accessories, jewelry, watches, hand bags and carry bags, stationery goods, key chains, picture frames and giftware, in Class 35.

In recent conversations with my client and by letter dated October 13, 1998, you provided us with the following information regarding your use of the name EYE CANDY. The name of your business is Ron Caldwell Jewelry. The nature of your business is design, production, and wholesale/retail sales of a line of fashion jewelry known as Ron Caldwell Jewelry line. You have been in business for eighteen years and own a small retail store named EYE CANDY in New York City which sells the Ron Caldwell line, other jewelry lines, watches and other accessories. The market for your products is moderate to better, with a mix of merchandise for both men and women. You use the term EYE CANDY as a name of the store only and do not use it as a trademark on any of the merchandise that you sell.

*Page 2*

Based on the foregoing information, you advised my client that you have no objection to its use and registration of the EYE CANDY mark as set forth above because you have no plans or desire to use EYE CANDY as a trademark on merchandise. My client similarly advised you that your use of EYE CANDY as the name of your New York City store is acceptable to it. Accordingly, you and my client have agreed the each of you can use the term EYE CANDY in your respective business as outlined above. Should your respective uses of the EYE CANDY name lead to any confusion in the marketplace in the future, you agree to notify each other and work together amicably to resolve the problem

    If this letter accurately sets forth your agreement with my client, I would appreciate it if you could countersign this letter below.  My client will then countersign as well and we will return a fully executed copy for your file.[5]

In response to applicant's motion for summary judgment, opposer argues that genuine issues of material fact exist because the coexistence agreement is not clear and unambiguous; because adequate consideration was not provided for the coexistence agreement; and because applicant was in breach of the coexistence agreement at the time opposer brought the notice of opposition.  Opposer provides the following narrative: in May of 1998 opposer, in preparation for filing its own application, undertook a search of the Office's database which uncovered applicant's pending application Serial No. 75/373,158 for merchandise (clothing) only.[6]  Opposer indicates that its principal then contacted applicant directly, informing applicant that opposer had been using the mark since May 1996 and was preparing to file an application for retail store services.  Opposer further indicates that the parties did not communicate again until August 1998 (that is, after applicant filed the application that is the subject matter of this opposition, including

---

[5] The signature of opposer's principal is followed by the calendar date "11/11/98."
[6] Application Serial No. 75/373,158 presently is not the subject matter of any pending inter partes proceeding at the Board.

retail store services), at which time, as provided by opposer in this narrative, applicant suggested that it had no objection to opposer's continued use of the mark EYE CANDY for its store. According to opposer, it requested that this be put in writing; in October 1998, applicant suggested a coexistence agreement; and opposer insisted on a clause requiring each party to "notify each other and work amicably" to resolve any actual confusion.

Opposer argues that all discussions had been focused on applicant's earlier application Serial No. 75/373,158 for clothing and that, unbeknownst to opposer, applicant also referred to a second application, which opposer did not know existed (Serial No. 75/496,244), in the coexistence agreement. Opposer contends that specific language on page 2 of the coexistence agreement is ambiguous, referring only to merchandise, not to services, because prior versions of the coexistence agreement related only to applicant's first application for clothing.[7] Opposer argues that its principal quickly perused the coexistence agreement, focusing on page 2 to ascertain if the requested language, concerning amicably resolving any confusion problems, had been included, and that

---

[7] The specific language relied on by opposer is "…you advised my client that you have no objection to its use and registrations of the EYE CANDY mark as set forth above because you have no plans or desires to use the trademark on merchandise."

believing the coexistence agreement only related to applicant's first application, he signed it. Opposer contends that, in addition to the agreement being ambiguous and unclear, the agreement lacks consideration because opposer did not get anything as a result of the coexistence agreement. Opposer also argues that applicant breached the agreement because, according to opposer, applicant was not responsive to opposer's notifications of incidents of actual confusion.[8]

Opposer's response is accompanied by the declaration of its attorney, Esteban A. Rockett, and accompanying exhibits;[9]

---

[8] Opposer has also requested discovery pursuant to Fed. R. Civ. P. 56(f) as to 1) facts surrounding the drafting of the coexistence agreement; 2) the intent of the parties in signing the coexistence agreement; and 3) applicant's breach of the coexistence agreement, arguing that the sought-after discovery is reasonably expected to create genuine issues of material fact as to whether the terms of the coexistence agreement are unclear and ambiguous, applicant's alleged breach of the agreement, and lack of consideration for the agreement. Inasmuch as opposer has submitted a substantive response to applicant's motion for summary judgment, opposer's request for discovery pursuant to Fed. R. Civ. P. 56(f) is denied. See, also, Quinn, TIPS FROM THE TTAB: Discovery Safeguards in Motions for Summary Judgment: No Fishing Allows, 80 Trademark Rep. 413, 416 (1990).

[9] Those exhibits are: a letter from opposer to applicant dated October 13, 1998, concerning the parties recent conversations about the marks (Ex. 1); a copy of the application for Serial No. 75/496,244 (Ex. 2); a copy of the coexistence agreement (Ex. 3); copies of correspondence between applicant's attorney and opposer's present and prior attorneys concerning opposer's alleged experiences of actual confusion (Ex. 4-10); copies of opposer's discovery requests (Ex. 11-13); a copy of an information subpoena with restraining notice, accompanying cover letter, and opposer's response to the subpoena, which concerns a debt that opposer indicates is not its debt but believes is applicant's debt (Ex. 14-16).

and the declaration of its owner, Ronald E. Caldwell, with respect to his actions leading up to and resulting in the coexistence agreement.

After careful consideration of the short, two-page coexistence agreement, and the arguments and evidentiary submissions presented by each party, we find that applicant has met its burden on summary judgment of establishing that no genuine issues of material fact exist and that it is entitled to registration as a matter of law.

Despite opposer's arguments to the contrary, the record is devoid of any evidence which raises a genuine issue of material fact as to whether the coexistence agreement is ambiguous, whether the agreement lacks consideration, and whether there has been a breach of the agreement on applicant's part.

The interpretation of an agreement must be based, not on the subjective intention of the parties, but on the objective words of their agreement. See *Novamedix Ltd. v. NDM Acquisition Corp.,* 49 USPQ2d 161, 1616 (Fed. Cir. 1999).

The first page clearly sets out both of applicant's pending applications, including the subject application herein, by application serial number and by international

classification for each class.  In addition, the reference to application Serial No. 75/496,244, the subject application, sets forth the individual items or categories of items in each class for which applicant is seeking registration.  The second page of the agreement expressly indicates opposer advised applicant that opposer has "…no objection to its [applicant's] use and registration of the EYE CANDY mark as set forth above…."

As to opposer's argument that prior versions of the agreement did not refer to the application which is the subject matter of this opposition, even if prior versions might create a genuine issue of material fact, here no copies of prior versions of the agreement were submitted.  Opposer's arguments that it "perused" the agreement, and that "unbeknownst" to opposer, applicant included the subject application is not supported by the agreement itself.  The agreement is short and uncomplicated in presentation.  The inclusion of application Serial No. 75/496,244 adds eight more lines to the first page of the agreement, the same number of lines in the first paragraph on the second page.  The use of the term "merchandise" in the first sentence of the first paragraph of the second page does not create an ambiguity with respect to opposer's agreement that it does not object to

applicant's "…use and registration of the EYE CANDY mark as set forth above…."

Thus, we find that the coexistence agreement is clear and unambiguous on its face.

As to applicant's arguments that it has not received any consideration in exchange for "…agreeing not to initiate this instant action," the coexistence agreement itself evidences the consideration. In exchange for opposer not objecting to applicant's use and registration, applicant indicated that opposer's use for its store was acceptable. Thus, no genuine issue of material fact exists with respect to consideration for the agreement.

Opposer's arguments that applicant breached the contract by being non-responsive to opposer's notification of actual confusion are not supported by the record. Opposer submitted correspondence from applicant indicating applicant's continued willingness to work together to alleviate any confusion. (Exhibits 4 and 9 accompanying the declaration of opposer's attorney.) Thus, no genuine issue of material fact exists with respect to any alleged breach of the agreement by applicant.

In view thereof, applicant's motion for summary judgment is granted, and the opposition is dismissed with prejudice.