THIS DECISION IS A
PRECEDENT OF THE TTAB

UNITED STATES PATENT AND TRADEMARK OFFICE
Trademark Trial and Appeal Board
P.O. Box 1451
Alexandria, VA  22313-1451

GCP

Mailed:  September 26, 2013

Opposition No. 91198922

The Clorox Company

v.

Hermilo Tamez Salazar

**Before Kuhlke, Wellington, and Bergsman,**
**Administrative Trademark Judges.**

**By the Board:**

Hermilo Tamez Salazar ("applicant") seeks to register the mark

CLOROTEC and design, as displayed below, for "electronic equipment,

namely, electrolysis cell for use in the manufacture of various ionic solutions"

in International Class 9.[1]



---

[1] Application Serial No. 85059351, filed on June 10, 2010, based on an allegation of use in commerce under Trademark Act Section 1(a), 15 U.S.C. § 1051(a), claiming May 27, 2010 both as the date of first use and the date of first use in commerce.

In its amended notice of opposition, The Clorox Company ("opposer"), as a ground for opposition, alleges priority of use and that applicant's mark, when used on the identified goods, so resembles opposer's previously used and registered CLOROX marks, CLOROX and diamond-shaped design marks, and diamond-shaped design marks standing alone, for various household and laundry cleaning products, including bleach, as to be likely to cause confusion, mistake or to deceive under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d).

As an additional ground for opposition, opposer asserts that applicant did not make *bona fide* use of his mark in commerce on the identified goods as of the filing date of his use-based application.

Applicant, in his answer, has denied the salient allegations of the amended notice of opposition.

This case now comes before the Board for consideration of opposer's third motion for summary judgment, which is a renewed motion (filed May 6, 2013) for summary judgment based solely on its asserted claim of lack of *bona fide* use as of the filing date of the subject application.[2]

In support of its renewed motion for summary judgment, opposer contends that, based upon applicant's responses to opposer's written

_____

[2] On April 30, 2013, the Board denied opposer's original motion for summary judgment on this ground because opposer had not set out this claim in its original pleading. By the same order, the Board, in light of the particular circumstances of this case, granted opposer leave to amend its pleading to include a claim of no *bona fide* use. Opposer filed an amended notice of opposition on May 6, 2013, which included a claim of no *bona fide* use as of the filing date of the involved use-based application.

discovery requests, applicant has conceded that he did not use his mark in commerce as of the filing date of his use-based application and has yet to use his mark in commerce. In particular, opposer maintains that applicant provided the following responses to opposer's interrogatories:

Interrogatory No. 3

Identify each good or service on which Applicant has used or intends to use Applicant's Mark in the United States.

Response to Interrogatory No. 3

Applicant objects to Interrogatory No. 3 on the grounds that it is [sic] calls for a response outside the scope of permissible discovery and seeks discovery of information that is irrelevant in that some goods or services are not covered by Applicant's Application for the Mark. Subject to the foregoing general and specific objections and without waiving the same, Applicant responds as follows:
**Applicant has not yet used the Mark on any product sold in the United States**. Applicant may use the Mark on equipment and services like Applicant has sold outside of the United States; namely, equipment for processes in industry, including tanks, filters, hydraulic, centrifugal and diaphragm pumps and chlorination units of all capacities.

(emphasis added).

Interrogatory No. 10

For each good identified in response to Interrogatory No. 3, state the number of units sold for each year since that good was introduced, inside the United States.

Response to Interrogatory No. 10

Applicant objects to Interrogatory No. 10 on the grounds that it is [sic] calls for a response outside the scope of permissible discovery and seeks discovery of information that is irrelevant in that some goods or services are not covered by Applicant's Application for the Mark. Subject to the foregoing general and specific objections and without

waiving the same, Applicant responds as follows: **No units have been sold to clients inside the United States**.

(emphasis added).

Opposer further contends that these interrogatory responses confirm what applicant previously stated in his declaration submitted in response to an earlier-filed motion for summary judgment regarding opposer's priority and likelihood of confusion claim, wherein applicant stated that "I have sold none of the machines described in the Application inside the United States, nor have I shipped one of these machines into the United States."[3]

Based upon these discovery responses and the declaration, opposer argues that there are no genuine disputes of material fact that there was no *bona fide* use of applicant's mark in commerce as of the filing date of applicant's use-based application and, therefore, opposer's motion for summary judgment should be granted.

As evidence in support of its renewed motion for summary judgment, opposer submitted the declaration of its attorney, Jeffrey E. Faucette, through which opposer makes of record (1) a true and correct copy of USPTO records regarding applicant's involved application Serial No. 85059351, printed from the USPTO's Trademark Electronic Search System ("TESS") database,[4] (2) a copy of applicant's declaration submitted in support of his response to opposer's earlier-filed motion for summary judgment on opposer's

---

[3] By order dated May 23, 2012, the Board denied opposer's motion for summary judgment on opposer's asserted claim of priority and likelihood of confusion.

[4] This application is of record by operation of Trademark Rule 2.122(b) and, therefore, there was no need for opposer to submit it with its motion.

asserted claim of priority and likelihood of confusion, and (3) applicant's responses to opposer's first set of interrogatories.

In response, applicant argues that opposer simply misrepresents to the Board the substance of applicant's responses to opposer's interrogatories inasmuch as nowhere does applicant admit that he has never used his involved mark in commerce in the United States. In fact, applicant maintains that since March 22, 2010 (a date earlier than the June 10, 2010, filing date of the subject application), his identified goods have been advertised and offered for sale on the English version of applicant's website. In addition to the depiction of his mark on his website, applicant contends that since May 31, 2011, machinery parts (presumably to make the goods identified in the application) bearing his CLOROTEC and design mark have been shipped from applicant's manufacturer located in Utah to applicant located in Mexico through one of applicant's licensees in Texas. Further, applicant argues that requiring the actual sale or transportation of goods such as those at issue is inequitable and inconsistent with Congress' intent in defining "use in commerce" in the Trademark Act. Specifically, applicant maintains that requiring a sale of a product of which applicant sells an average of fewer than one per year, at prices ranging from two hundred thousand dollars to two million dollars or more, or requiring transportation of an approximately one-ton piece of machinery that is custom-made to a client's

specifications, was not Congress' intent with its "use in commerce" requirements.

As evidence in support of his response to opposer's renewed motion for summary judgment, applicant submitted a declaration wherein he provided, among other things, a description of and the cost of his goods, the number of goods sold since 2004, and information about the existence and contents of his website, the English version of which was launched March 22, 2010.

Decision

Summary judgment is appropriate only when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The Board may not resolve issues of material fact; it may only ascertain whether a genuine dispute regarding a material fact exists. *See Lloyd's Food Products, Inc. v. Eli's, Inc.*, 987 F.2d 766, 766, 25 USPQ2d 2027, 2029 (Fed. Cir. 1993); *Old Tyme Foods, Inc. v. Roundy's, Inc.*, 961 F.2d 200, 22 USPQ2d 1542, 1544 (Fed. Cir. 1992).

When the moving party has supported its motion with sufficient evidence that, if unopposed, indicates there is no genuine dispute of material fact, the burden then shifts to the non-moving party to demonstrate the existence of a genuine dispute of material fact to be resolved at trial. *Enbridge, Inc. v. Excelerate Energy LP*, 92 USPQ2d 1537, 1540 (TTAB 2009). All evidence must be viewed in a light favorable to the nonmovant, and all justifiable inferences are to be drawn in the nonmovant's favor. *Lloyd's Food Products, Inc.*, *supra*;

*Opryland USA Inc. v. Great American Music Show Inc.*, 970 F.2d 847, 850, 23 USPQ2d 1471, 1472 (Fed. Cir. 1992).

Standing

Before we consider the merits of opposer's renewed motion for summary judgment, we must first entertain the question of whether opposer has standing to bring this opposition proceeding. Opposer must demonstrate "that it has a reasonable belief that it would be damaged" by the registration of applicant's mark. *Syngenta Crop Protection, Inv. v. Bio-Check, LLC*, 90 USPQ2d 1112, 1118 (TTAB 2009). In this case, there is no genuine dispute of material fact regarding opposer's standing. Indeed, opposer has established its standing by attaching as exhibits to its amended notice of opposition copies of its pleaded registrations obtained from the Office's TESS database, showing that the registrations are valid and subsisting and owned by opposer. *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 55 USPQ2d 1842, 1844 (Fed. Cir. 2000) (party's registration establishes standing). Applicant does not contest opposer's standing, nor has applicant introduced contradictory evidence or filed a counterclaim seeking to cancel any of opposer's pleaded registrations.

No *Bona Fide* Use In Commerce As Of Filing Date Of Application

Turning to the merits of opposer's renewed motion for summary judgment, having considered the evidence and arguments submitted by the parties, and viewing the evidence in the light most favorable to applicant, we

find that opposer has satisfied its burden of setting forth a *prima facie* showing that there are no genuine disputes of material fact remaining for trial and that it is entitled to judgment as a matter of law as to its claim that applicant had not made *bona fide* use of its mark in commerce as of the filing date of applicant's use-based application.

"The term 'use in commerce' means the bona fide use of a mark in the ordinary course of trade, and not merely to reserve a right in a mark." 15 U.S.C. § 1127. Furthermore, a trademark is in use in commerce on goods when "(A) it is placed in any manner on the goods or their containers or the displays associated therewith … or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and (B) the goods are sold or transported in commerce." *Id*.

Here, there is no genuine dispute of material fact that applicant did not use his CLOROTEC and design mark within the meaning of the Trademark Act as of the filing date of his use-based application. Indeed, applicant's responses to opposer's interrogatory requests and his declaration submitted in response to opposer's earlier-filed motion for summary judgment on the ground of priority and likelihood of confusion establish that applicant did not sell or transport his identified goods bearing the CLOROTEC and design mark in commerce as of the filing date of his use-based application.

Applicant argues that any requirement for the actual sale or transportation of goods such as applicant's is inequitable and inconsistent

with Congress' intent behind the "use in commerce" definition. This argument is without merit. While the legislative history of the Trademark Act states, *inter alia*, that "infrequent sales of large or expensive or seasonal products, reflect legitimate trademark uses in the normal course of trade," *see* 134 Cong. Rec. S16973 (daily ed. Oct. 20, 1988) (statement of Sen. DeConcini), this statement is not inconsistent with the plain language of the statute which requires "sales" even if they are infrequent or seasonal in nature. Moreover, applicant fails to cite to any authority supporting the proposition that "use in commerce" does not require any actual sales or transport of goods when they are large or infrequently sold. Applicant's position is in conflict with the clear and plain statutory definition of "use in commerce." *See* 15 U.S.C. § 1127.

Applicant's proposition that the depiction of his applied-for mark on the website he describes in his declaration constitutes "use in commerce" is similarly unavailing. The mere use of a trademark in the advertising or promotion of goods in the United States is insufficient to constitute use of the mark in commerce, within the meaning of the Trademark Act, where the advertising or promotion is unaccompanied by any actual sale or transport of the goods in commerce, as is the case here. *Buti v. Perosa S.R.L.*, 139 F.3d 98, 45 USPQ2d 1985 (2d Cir. 1998).

Finally, applicant's assertion that the shipment of parts for his goods bearing the CLOROTEC and design mark from Utah to Mexico as of May 31,

2011, constitutes use in commerce is of no avail. We note that applicant filed his use-based application on June 10, 2010. Accordingly, any alleged use subsequent to the filing date of applicant's use-based application, as contended by applicant, is not *bona fide* use as of the filing date of the application.

Even assuming *arguendo* that the transport of goods bearing applicant's mark from applicant's manufacturer to applicant occurred as early as the filing date of his application, such use does not constitute use in commerce as defined by the Trademark Act. *See Avakoff v. Southern Pac. Co.*, 765 F.2d 1097, 226 USPQ 435 (Fed. Cir. 1985); *accord, General Healthcare Ltd. v. Qashat*, 364 F.3d 332, 70 USPQ2d 1566 (1st Cir. 2004). We first note that applicant's manufacturer only shipped *parts* that applicant used in conjunction with *other* parts that were then used to produce his identified goods. Accordingly, there was no shipment of an actual finished product. Further, even if applicant's manufacturer shipped the finished product bearing applicant's mark from Utah to applicant located in Mexico, or *all* parts necessary to construct the product, such transportation of goods from a manufacturer to the owner of the trademark, even when the goods bear the trademark, is purely a delivery of the goods to the trademark owner in preparation for offering the goods for sale and, therefore, does not constitute *bona fide* use of applicant's mark in commerce. *Avakoff*, 226 USPQ at 436 (Fed. Cir. 1985); *General Healthcare*, 70 USPQ2d at 1569-70.

Conclusion

Based upon the record before us and applicable law, we find that there are no genuine disputes of material fact that opposer has established its standing to bring this opposition proceeding and that there was no *bona fide* use of applicant's mark in commerce at the time applicant filed his use-based application. Accordingly, opposer's motion for summary judgment as to its asserted claim of lack of *bona fide* use is GRANTED, the opposition is sustained as to this claim, applicant's application is void *ab initio*,[5] as a matter of law, and registration to applicant is refused.[6] *Aycock Engineering, Inc. v. Airflite, Inc.*, 560 F.3d 1350, 90 USPQ2d 1301, 1305 (Fed. Cir. 2009) ("The registration of a mark that does not meet the use requirements is void ab initio.")

---

[5] Applicant was aware of the opportunity to amend the filing basis of his application from a use-based application under Section 1(a) of the Trademark Act to an intent-to-use application pursuant to Section 1(b) of the Trademark Act, but did not do so, explaining that "he would only have three years from the Notice of Allowance in which to make a sale or transport a product" and that this limited time would lead to an "inequitable result that, despite his best efforts and his expenditure of resources on promoting his product, Applicant might not complete a sale in the United States for many years and thus could never register the Mark for his expensive, custom-made, not-easily-transported product." *See* p. 6 of applicant's response to opposer's renewed motion for summary judgment. While the Board understands applicant's concerns, this does not excuse applicant from making a *bona fide* use of his mark as of the filing date of his use-based application in accordance with the Trademark Act.

[6] Because we have refused registration based on opposer's claim that applicant did not have *bona fide* use of his mark in commerce as of the filing date of his use-based application, we need not reach opposer's additional claim of priority and likelihood of confusion.